UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LEBANON VALLEY AUTO RACING
CORP., *et al.*,

                    Plaintiffs,

      v.                                 1:20-CV-0804 (LEK/TWD)

ANDREW CUOMO, *et al.*,

                    Defendants.

 

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

        Plaintiffs Lebanon Valley Auto Racing Corporation ("Lebanon Valley"), Genessee

Speedway, LLC, Airborne Speedway, Albany Saratoga Speedway, and Fonda Speedway

(collectively, "Plaintiffs") have brought this action under 42 U.S.C. § 1983 and 28 U.S.C.

§§ 2201–02 against New York Governor Andrew Cuomo and New York Attorney General

Letitia James (collectively, "Defendants"). Dkt. No. 1 ("Complaint").

        Plaintiffs assert that Defendants violated the First, Fifth, and Fourteenth Amendments to

the United States Constitution, New York Executive Law § 29-a, and four provisions of the

Constitution of the State of New York: Article III, § 1; Article IV, §§ 1 and 3; and Article VI.

Compl. ¶ 2. More specifically, Plaintiffs allege that Defendants ran afoul of these provisions

when, as part of New York's response to COVID-19, they enacted an executive order restricting

how Plaintiffs' businesses can operate.

        Now before the Court are Plaintiffs' motion for a temporary restraining order and

preliminary injunction, Dkt. No. 4 ("Plaintiffs' Motion"), and Defendants' motion to dismiss

the Complaint ("Defendants' Motion"), Dkt. No. 15-2. The parties oppose one another's

motions. See generally Defs.' Mot. (opposing Plaintiffs' Motion in addition to seeking dismissal); Dkt. No. 16 ("Plaintiffs' Reply"). The Court grants Defendants' Motion, mooting Plaintiffs' Motion.

## II.     BACKGROUND

### A.  Factual History

#### 1.  The Parties

Plaintiffs are five operators of outdoor auto racing facilities in the state of New York. Compl. ¶ 3. Plaintiffs' patrons "pay an admission fee to watch auto racing and occasional special events such as fireworks." Id. ¶ 32. The auto-racing season runs for approximately six months, from mid-April until mid-September, with races held weekly. See id. ¶¶ 3, 32.

Cuomo is Governor of New York, and James is its Attorney General. Id. ¶ 1.

#### 2.  COVID-19, New York's Response, and the Racetrack Spectator Ban

This case arises amidst the ongoing COVID-19 pandemic, of which New York has been described as the "epicenter." Defs.' Mot. at 10. On March 2, 2020, the New York State Legislature passed S7919 to amend the New York State Executive Law to establish an enumerated list of disaster events, including epidemics, during which a governor may suspend statutes or regulations and issue directives. See Defs.' Mot. at 10–11. This lawsuit concerns the state executive branch's use of this new authority to respond to the pandemic.[1]

---

[1] The parties offer starkly contrasting characterizations of New York's use of this authority. For instance, Plaintiffs quote the complaint from Soos v. Cuomo, No. 20-CV-651, another case involving a challenge to Defendants' COVID-19-related orders, to blame Defendants for creating "a veritable dictatorship by means of a complex web of defendant Cuomo's executive orders, by which defendants have imposed and selectively enforced 'social distancing' under a 'lockdown' of virtually every aspect of the social, political, religious and economic life of New York's 8.3 million residents on the pretext of 'public health', but with numerous exceptions defendants

On March 7, 2020, Cuomo issued Executive Order 202, declaring a statewide disaster emergency. Compl. ¶ 16. This order was soon followed by a number of supplemental orders restricting gatherings across the state. See id. ¶ 17; Dkt. No. 15 ("Hutton Declaration") ¶ 24.

On May 21, 2020, Cuomo issued Executive Order 202.32, which included a provision (the "Racetrack Spectator Ban") allowing racetracks to operate effective June 1, 2020 as long as they do not "permit any visitor or fan into the facility, and allow[] on site only essential personnel[.]" Executive Order 202.32, https://www.governor.ny.gov/news/no-20232-continuing-temporary-suspension-and-modificati on-laws-relating-disaster-emergency (May 21, 2020). Under the Racetrack Spectator Ban, which was initially in effect until June 20, 2020, racetracks must also "adhere to any directive or guidance issued by the Department of Health and/or by the Gaming Commission." Id. The Racetrack Spectator Ban has been extended a number of times, most recently on July 30, 2020, and is in effect until August 29, 2020. See Dkt. No. 18 (citing Executive Order 202.54, https://www.governor.ny.gov/news/no-20254-continuing-temporary-suspension-and-modificati on-laws-relating-disaster-emergency).

Summarizing the current regulatory state of play, Defendants write that "currently, Plaintiffs may operate their auto racetrack facilities without spectators or fans (even if some spectators or fans would otherwise be permitted under current outdoor gathering limitations), as long as such operation is in compliance with applicable State guidance." Defs.' Mot. at 12.

---

deemed permissible according to their value judgments, including mass demonstrations of thousands of people of which they approve." Compl. at 3. Defendants, on the other hand, characterize the executive orders as "a series of initiatives to fight the spread of the virus through minimizing in-person contact between New Yorkers." Defs.' Mot. at 11.

B.  **Procedural History**

Plaintiffs filed their Complaint on July 16, 2020. Docket. In it, they ostensibly raise four causes of action: one alleging that Defendants violated their equal protection rights, one alleging a First Amendment[2] violation, one alleging that Defendants' actions constitute a Fifth Amendment taking, and one alleging that Defendants committed ultra vires state action with respect to New York Executive Law § 29-a. See Compl. at 1–2, 10–15. The same day, Plaintiffs filed their motion for a temporary restraining order and preliminary injunction. Docket. They ask the Court to "enjoin Defendants from enforcing those Orders which prevent Plaintiffs from opening their businesses." Pls.' Mot. at 4.

In asking for relief, Plaintiffs rely exclusively on the decision in Soos v. Cuomo, No. 20-CV-651, 2020 U.S. Dist. LEXIS 111808 (N.D.N.Y. June 26, 2020).[3] There, the court held that a group of plaintiffs had demonstrated that they were likely to succeed on the merits of their claim that these same defendants had infringed upon the plaintiffs' free exercise of religion in selectively enforcing gathering limitations against religious groups but not protestors or graduation participants. See id. at *32–33. The Soos court therefore preliminarily enjoined the defendants from enforcing gathering limitations against those plaintiffs. Id. at *35.

_____

[2] Though the Complaint references the First Amendment, Compl. ¶¶ 2, 15, Defendants correctly note that Plaintiffs do not include a formal count alleging a First Amendment violation. The Court nevertheless construes the Complaint to assert a claim under the First Amendment.

[3] Soos is the sole case cited by Plaintiffs in their Motion. The only other cases cited in their Reply are cases cited by Defendants in *their* Motion. Defendants correctly point out that Plaintiffs' Motion fails to comply with the local rules in that it is not "supported by the submission of a memorandum of law and an affidavit." Hilson v. Beaury, No. 13-CV-606, 2014 U.S. Dist. LEXIS 132941, at *22–23 (N.D.N.Y. Aug. 13, 2014). Prioritizing substance over form, the Court will nevertheless proceed to address the merits of the parties' motions.

4

On July 27, 2020, Defendants filed their opposition to Plaintiffs' Motion and their cross-motion to dismiss. Docket. Defendants argue that Plaintiffs fail to state a plausible claim for relief in any cause of action and therefore cannot demonstrate that they are likely to succeed on the merits as required for the Court to grant a preliminary injunction. Defs.' Mot. at 9. Defendants also argue that Plaintiffs fail to demonstrate irreparable harm, another requirement for the relief sought. Id. Finally, Defendants argue that the balance of equities weighs against enjoining the Racetrack Spectator Ban. Id. at 9–10.

## III.   LEGAL STANDARD

### A.  Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Put another way, a claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" Pare v. Valet Park of Am., Inc., No. 19-CV-206, 2020 WL 495038, at *4 (N.D.N.Y. Jan. 30, 2020) (Kahn, J.) (alterations in original) (quoting Twombly, 550 U.S. at 556). "In assessing whether this standard has been met, courts 'must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[]. . . .'" Charles Ramsey Co., Inc. v. Fabtech-NY

LLC, No. 18-CV-546, 2020 WL 352614, at *9 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (alteration

in original) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)).

### B. Temporary Restraining Order and Preliminary Injunction

The standard for the issuance of a temporary restraining order is identical to that for the

issuance of a preliminary injunction. See Local 1814, Int'l Longshoremen's Ass'n v. New York

Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992). To obtain a preliminary injunction, "a

plaintiff must demonstrate (1) irreparable injury and (2) either (a) a likelihood of success on the

merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping

decidedly in the plaintiff's favor in order for a preliminary injunction to issue." Fair Hous. in

Huntington Comm. v. Town of Huntington, 316 F.3d 357, 365 (2d Cir. 2003) (internal

quotation marks omitted). "When a plaintiff seeks an injunction staying governmental action

'taken in the public interest pursuant to a statutory or regulatory scheme,' however, an

injunction will issue only if the plaintiff can show irreparable injury and meet 'the more

rigorous likelihood-of-success standard.'" Id. (quoting Bery v. City of New York, 97 F.3d 689,

694 (2d Cir. 1996)).

## IV.    DISCUSSION

The Court first considers Defendants' motion to dismiss because, if granted, it would

moot Plaintiffs' motion for a temporary restraining order and preliminary injunction. See

Hanover Ins. Group v. Singles Roofing Co., No. 10-CV-611, 2012 U.S. Dist. LEXIS 85813

(N.D. Ill. June 21, 2012) (analyzing a motion to dismiss prior to a motion for preliminary

injunction). Because the Court grants Defendants' motion to dismiss, Plaintiffs' Motion is

mooted.

6

### A.  Motion to Dismiss

#### 1.  Plaintiffs' First Amendment Claim

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend I. Plaintiffs allege that Defendants' executive orders barring spectators from their racetracks infringe upon their freedom of speech, assembly, and expressive association. See Compl. ¶ 15. Because Plaintiffs fail to identify any guiding legal authority supporting their First Amendment claim, the Court grants dismissal. See Smith v. Campbell, No. 11-CV-540, 2012 U.S. Dist. LEXIS 143294, at *17 (W.D.N.Y. Oct. 3, 2012) (granting dismissal of First Amendment claim where plaintiff failed to provide supporting legal authority).

"To state a First Amendment claim, a plaintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment." Salmon v. Blesser, 802 F.3d 249, 255 (2d Cir. 2015) (citing Virginia v. Black, 538 U.S. 343, 358 (2003)).

Here, Plaintiffs make no allegation that Defendants' actions were in retaliation against protected speech or conduct. See Pls.' Reply at 16 ("There is no claim to free speech retaliation[.]"). There also does not appear to be any allegation that Defendants infringe upon expressive conduct. See generally Compl. The essence of Plaintiffs' First Amendment claim appears to be that "Cuomo's edict forbidding spectators, infringes upon the right to assemble." Id.

7

"[C]ourts have long held that the constitutional right to assembly—like the right to free speech—is not absolute." Amato v. Elicker, No. 20-CV-464, 2020 U.S. Dist. LEXIS 87758, at *26–27 (D. Conn. May 19, 2020) (citing Papineau v. Parmley, 465 F.3d 46, 56 (2d Cir. 2006)). That is especially true in the context of an epidemic; in Jacobson v. Massachusetts, the United States Supreme Court refused to second-guess a state law enacted during a smallpox outbreak permitting localities to require vaccinations. 197 U.S. 11 (1905). Jacobson "held that 'a community has the right to protect itself against an epidemic of disease which threatens the safety of its members,' including by 'enact[ing] quarantine laws and health laws of every description.'" Amato, 2020 U.S. Dist. LEXIS 87758, at *27–28 (quoting Jacobson, 197 U.S. at 27, 25).

In the context of the current pandemic, Jacobson has been called "the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to emergency public health measures." In re Abbott, 954 F.3d 772, 785 (5th Cir. 2020). Jacobson has been applied in the context of First Amendment challenges to state and local regulatory authority during the pandemic. See Amato, 2020 U.S. Dist. LEXIS 87758, at *32 (denying injunction in freedom-of-assembly challenge to Connecticut restriction on number of attendees at gatherings). "[S]o long as the people's elected leaders are working within the confines of the people's constitutional rights, courts are not here to second-guess or micromanage [the elected leaders'] already unenviable jobs guiding us through profoundly unprecedented challenges." Henry v. DeSantis, No. 20-CV-80729, 2020 U.S. Dist. LEXIS 86396, at *25 (S.D. Fla. May 14, 2020) (granting Florida governor's motion to dismiss constitutional challenge to COVID-19 order prohibiting dine-in restaurant service). Accordingly, courts have denied freedom-of-

assembly challenges to state authority during the pandemic. See Tigges v. Northham, No. 20-CV-410, 2020 U.S. Dist. LEXIS 131592, at *22 (E.D. Va. July 21, 2020) (no likelihood of success on the merits in freedom-of-assembly challenge to Virginia executive order limiting attendees at gatherings); Legacy Church, Inc. v. Kunkel, No. 20-CV-327, 2020 U.S. Dist. LEXIS 122542, at *362, *372, *380, *385 (D.N.M. July 13, 2020) (unsuccessful freedom-of-assembly to a number of New Mexico executive orders impacting religious gatherings).

Here, Defendants have enacted regulations that they argue are in the interest of public health. Hutton Decl. ¶ 24. The Court refuses to insert itself in the ongoing nationwide dispute regarding the proper balance to be struck between regulating for the public welfare on one hand and free enterprise on the other. Jacobson requires courts to afford politically accountable officials significant discretion in striking the appropriate balance during pandemics. See Jacobson, 197 U.S. at 27 ("The authority to determine for all what ought to be done in such an emergency must have been lodged somewhere or in some body; and surely it was appropriate for the legislature to refer that question, in the first instance, to a Board of Health, composed of persons residing in the locality affected and appointed, presumably, because of their fitness to determine such questions.").

Soos, the sole case on which Plaintiffs rely, is inapposite. The successful challenge to state executive orders in that case was based on the free exercise of religion, not freedoms of speech or assembly. See Soos, 2020 U.S. Dist. LEXIS 111808, at *32–33. While the Soos plaintiffs likewise raised free speech, assembly, and expressive association challenges, id. at *19, the injunction issued on free-exercise grounds, id. at *22 n.4 ("Plaintiffs argue that each of their four causes of action is likely to succeed on the merits. Because each of the prongs is met

with respect to Plaintiffs' Free Exercise Clause claim, the court need not, and does not, analyze the remainders.") (citation omitted). While "the First Amendment requires the State to treat religious activity the same as it treats analogous secular activity[,]" Legacy Church, Inc., 2020 U.S. Dist. LEXIS 122542, at *275 n.40 (citing Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993)), a state "may permissibly restrict non-expressive outdoor activity in the name of public health, like sporting events and barbecues[.]" Legacy Church, 2020 U.S. Dist. LEXIS at *275 n.40. A state may even treat various outdoor activities different, as long as it does not treat religious activity differently from similar secular activity. See id. Soos, therefore, has little instructive value in a case such as this one that does not involve an allegation that secular activity has been treated differently from religious activity.

Furthermore, regulations of commercial activity such as the Racetrack Spectator Ban have First Amendment implications only if the activity in question is "inseparably intertwined with a particularized message." See Young v. New York City Police Dep't, 903 F.2d 146, 153 (2d Cir. 1990). The Court is unable to discern any message so closely linked with auto racing— or more specifically, its display in front of spectators—to trigger First Amendment protection.

In conclusion, Plaintiffs have failed to state a claim under the First Amendment. A state's regulatory authority during a public health crisis is wide. See, e.g., Jacobson, 197 U.S. at 25. There is no requirement that a state treat different secular activities identically. See Legacy Church, 2020 U.S. Dist. LEXIS at *275 n.40. The New York State Legislature provided Cuomo with significant powers during a pandemic, and Cuomo's use of that authority cannot be said to have exceed "the confines of the people's constitutional rights," Henry, 2020 U.S. Dist. LEXIS 86396, at *25.

10

### 2. Plaintiffs' Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). This clause encompasses two types of claims: ones for selective enforcement, and others made on behalf of a class of one. See Eldars v. State Univ. of N.Y., No. 19-CV-801, 2020 U.S. Dist. LEXIS 87697, at *17 (N.D.N.Y. May 19, 2020). The essence of Plaintiffs' equal protection claim appears to be that their racetracks have been treated differently from demonstrators and other non-essential businesses. See Compl. ¶¶ 14 ("[W]hile the challenged orders have been issued and enforced around the State, Cuomo has been granting exceptions to and enthusiastically encouraging demonstrators (rioters?) to gather in many cities around the State including, but not limited to N.Y.C., Buffalo, Syracuse, Albany and Troy."), 42 ("Since the State has repeatedly issued 'exemptions' to rioters, Plaintiffs herein are entitled to equal treatment."), 44 ("While many 'non-essential' businesses have been permitted to open, there is no definition of 'non-essential', leaving Cuomo to pick 'winners' and 'losers'."). It therefore appears to be one for selective enforcement. See Pls.' Reply ¶ 17 ("No (or insignificant) enforcement at the riots, total enforcement against all Plaintiffs, that is the very definition of selective enforcement.").

"To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional

rights, or malicious or bad faith intent to injure a person.'" See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). The similarly situated individuals must be "roughly equivalent." AYDM Assocs., LLC v. Town of Pamelia, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016). Dismissal for failure to state a claim is proper when a plaintiff fails to include anything more than conclusory allegations regarding similarly situated individuals. See C.T. v. Valley Stream Union Free Sch. Dist., F. Supp. 3d 307, 322 (E.D.N.Y. 2016).

Defendants argue, and the Court agrees, that Plaintiffs' equal protection claim must be dismissed for failure to allege "specific facts showing that the comparators are 'similar in relevant respects.'" See Lilakos v. New York City, No. 18-CV-3858, 2020 U.S. App. LEXIS 10998, at *5 (2d Cir. Apr. 8, 2020) (quoting Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 143 (2d Cir. 2010)). First, with respect to the Racetrack Spectator Ban, Plaintiffs have not alleged any facts suggesting some racetracks have not been subject to enforcement. Second, Plaintiffs' vague references to "demonstrators" and "rioters," Compl. ¶ 14, do not convince the Court that such individuals are "roughly equivalent" to state-regulated businesses such as racetracks, AYDM Assocs., 205 F. Supp. 3d at 265. Plaintiffs focus heavily on the fact that they "are not allowed to have people present, at all," while the protests "were allowed to have at times, thousands of people present." Pls.' Reply. ¶ 17. The Court does not find the requisite rough equivalence between private, capacity-limited sports venues on one hand and attendees of public protests on the other.

Because Plaintiffs have not plausibly pled facts suggesting they have been treated differently from others similarly situated, the Court grants Defendants' motion to dismiss the equal protection claim.

### 3. Plaintiffs' Fifth Amendment Claim

The Takings Clause of the Fifth Amendment of the United States Constitution, which applies to states via the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., am. 5. Plaintiffs argue that, by banning spectators, Defendants have precluded use of their property to earn money, "effectively amount[ing] to a taking." Compl. ¶ 53.

#### a. Ripeness

Defendants argue that Plaintiffs' Fifth Amendment claim should be dismissed as unripe. The Court disagrees, concluding that Plaintiffs' Fifth Amendment claim is ripe for judicial review.[4]

Plaintiffs bear the burden of establishing their claim is ripe. See Murphy v. New Milford Zoning Comm'n, 402 F.3d 342 (2d Cir. 2005). Defendants ask the Court to apply the ripeness test applicable to takings claims found in Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002). See Defs.' Mot. at 20. There, the Second Circuit set forth a two-prong test for determining whether a takings claim is ripe for judicial review. Under Dougherty, such a claim was not ripe unless a property owner could show that "(1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought

---

[4] The Court's finding that Plaintiffs' takings claim is ripe might not even be necessary for it to review that claim. The United States Supreme Court has said that the ripeness requirement for takings claims is prudential, not jurisdictional. See Horne v. Dep't of Agric., 569 U.S. 513, 526 (2013); Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 729 (2010). Thus, some courts have assessed the merits of takings claims without deciding that the matter is ripe. See Adam Bros. Farming, Inc. v. County of Santa Barbara, 604 F.3d 1142, 1148 (9th Cir. 2010) ("[W]e have the discretion to waive the requirements of Williamson County, assume that ripeness is met and continue with our analysis.").

just compensation by means of an available state procedure." Id. at 88 (citing Williamson Cty. Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985)).

Because Plaintiffs have not alleged that they have sought just compensation through state process, Defendants argue the takings claim is not ripe. However, in Knick v. Township of Scott, the United States Supreme Court rejected the second prong of the Dougherty test as imposing an "unjustifiable burden on takings plaintiffs." 139 S. Ct. 2162, 2167 (2019). The other Dougherty prong—the requirement that a state regulatory entity have rendered a final decision on the matter—nevertheless remains intact. See Sagaponack Realty, LLC v. Vill. of Sagaponack, 778 F. App'x 63, 64 (2d Cir. 2019) ("Knick leaves undisturbed the first prong, that a state regulatory agency must render a final decision on a matter before a taking claim can proceed."). This prong requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson Cty., 473 U.S. at 186.

Plaintiffs allege that, in advance of a planned July 4 fireworks display at Lebanon Valley, that facility's Department of Health license was revoked and a New York State Liquor Authority investigator suspended its liquor license. See Compl. ¶ 11; Pls.' Reply at 5. The revocation and suspension were apparently in response to advertisements promoting the event. See Compl. ¶ 11. It is plausible that these state regulators were tasked with implementing the executive order banning spectators and concluded that the July 4 event would constitute a violation. The enforcement allegation demonstrates the requisite level of finality.

Defendants make no argument with respect to the first Dougherty prong. They take the stance in this litigation that: "Plaintiffs may operate their auto racetrack facilities without

14

spectators or fans (even if some spectators or fans would otherwise be permitted under current outdoor gathering limitations, as long as such operation is in compliance with applicable State guidance." Defs.' Mot. at 12. This, too, suggests that a "final decision" regarding the application of the Racetrack Spectator Ban to Plaintiffs' properties has been made.

In sum, Plaintiffs have plausibly alleged a "final decision, " allowing the Court to conclude this claim is ripe for review.

b.  Whether Plaintiffs Have Stated a Takings Claim

Defendants argue that, "even if ripe for review, Plaintiffs fail to state a claim under the Takings Clause." The Court agrees and accordingly dismisses Plaintiffs' Fifth Amendment claim.

"The law recognizes two species of takings: physical takings and regulatory takings." Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006). This case involves an alleged regulatory taking, which occurs "when the government acts in a regulatory capacity." Id. "Regulatory takings are further subdivided into categorical and non-categorical takings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1378 n.2 (Fed. Cir. 2008). Categorical takings occur in "the extraordinary circumstances when no productive or economically beneficial use of land is permitted." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002). If a regulation results in less than a complete elimination of value, it is analyzed as a non-categorical taking under the United States Supreme Court's framework in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978). See Sherman v. Town of Chester, 752 F.3d 554, 564 (2d Cir. 2014).

Here, Plaintiffs do not assert that a categorical taking occurred.[5] They do not allege in their Complaint[6] that Defendants' actions have deprived them of their properties' entire value. Instead, they allege that remaining open only to competitors and not to spectators is "not economically viable" and "not financially sustainable." Compl. ¶ 36.

Having concluded that the alleged taking here is non-categorical, the Court turns its attention to the framework from Penn Central, which "requires an intensive *ad hoc* inquiry into the circumstances of each particular case." Buffalo Teachers Fed'n, 464 F.3d at 375. "We weigh three factors to determine whether the interference with property rises to the level of a taking: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. This analysis is properly conducted even at the motion-to-dismiss stage. See Sherman, 752 F.3d at 566 (balancing Penn Central factors in reviewing district court's order granting motion to dismiss); Kabrovski, 149 F. Supp. 3d at 426 (W.D.N.Y. 2015)

---

[5] Even had Plaintiffs alleged a categorical taking in their Complaint, such an assertion might not be sufficiently plausible. It defies common sense to conclude "no productive or economically beneficial use of [Plaintiffs'] land is permitted" simply because that land cannot currently be used as a racetrack with spectators. See Kabrovski v. City of Rochester, 149 F. Supp. 3d 413, 425 (W.D.N.Y. 2015) (A taking "does not occur merely because a property owner is prevented from making the most financially beneficial use of a property").

[6] Plaintiffs *do* allege in their Reply that "the impact is 100% loss of income which cannot be recovered," Reply ¶ 20, and that they have "been prevented from generating any return on . . . ownership," Reply ¶ 21. The Court does not consider these allegations, confining its review to the Complaint. See Robinson v. Town of Kent, No. 11-CV-2875, 2012 U.S. Dist. LEXIS 102922, at *11 (S.D.N.Y. July 24, 2012) ("In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein."); In re Colonial Ltd. Partnership Litig., 854 F. Supp. 64, 79 (D. Conn. 1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss.").

16

(balancing <u>Penn Central</u> factors in granting motion to dismiss).

While the first <u>Penn Central</u> factor—the economic impact of the regulation on the claimant—appears to favor Plaintiffs, that boost is dampened by the lack of specificity with which they plead financial harm. <u>See</u> <u>Kabrovski</u>, 149 F. Supp. 3d at 424 ("With respect to the first <u>Penn Central</u> factor, the Complaint does not indicate the economic impact that the Defendants' actions have had on the Plaintiff, except in vague and conclusory terms."). As discussed above, the Complaint[7] states only that Plaintiffs have lost their earning potential for their racetracks. Compl. ¶¶ 53, 55. While Plaintiffs allege that racing in front of empty grandstands is "not economically viable" or "financially sustainable," <u>id.</u> ¶ 36, they omit any discussion of any revenue brought in from current operations, <u>see generally</u> Compl. And the Court again notes that limitations on particular uses of property do not necessarily diminish significantly that property's value. <u>See, e.g.</u>, <u>Tirolerland, Inc. v. Lake Placid 1980 Olympic Games, Inc.</u>, 592 F. Supp. 304, 313 (N.D.N.Y. 1984) ("It is clear, however, that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred."). On balance, however, the first factor weighs in favor of allowing Plaintiffs' takings claim to proceed.

Moving to the second factor, while reasonable to assume Defendants' regulations have interfered with Plaintiffs' investment-backed expectations for their properties, the Complaint is devoid of any such allegation. Plaintiffs come closest when they allege that their racing season

---

[7] Here, too, Plaintiffs become more specific only in opposing Defendants' Motion to Dismiss. <u>See</u> Pls.' Reply ¶ 22 ("Plaintiff Lebanon Valley suffers a weekly loss of between eight and ten thousand dollars, as a result of not being able to have spectators. The remaining other Plaintiffs loose [sic] between three and six thousand dollars per week each."). The Court again notes its inability to consider these allegations at this stage. <u>See</u> <u>supra</u> n.6.

was scheduled to start in April and run for six months. Compl. ¶ 32. But the halt in Plaintiffs'

normal operations is only temporary. As Defendants point out, "Plaintiffs do not allege that the

applicable Executive Orders will prevent them from ever realizing a financial return on their

properties, or that the value of their property will be severely reduced." Defs.' Mot. at 24. By

omitting discussion of investment-backed expectations, "the pleading fails to plausibly allege a

taking under this factor." See Kabrovski, 149 F. Supp. 3d at 425. Moreover, fluctuations in

profitability under a new regulation do not establish a regulatory taking, "provided that the

state's action does not destroy the marketability of the regulated property." Elmsford Apt.

Assocs., LLC v. Cuomo, No. 20-CV-4062, 2020 U.S. Dist. LEXIS 115354, at *32 (S.D.N.Y.

June 29, 2020) (granting summary judgment to Cuomo in defending takings challenge to

tenant-protection executive orders issued due to COVID-19). Like businesses around the

country, Plaintiffs' racetracks are undoubtedly hurting. But their properties retain value. See

Pls.' Reply ¶ 21 ("Further, in a case where the value of land is diminished, the owner may seek

reductions in property tax to reflect the diminution. No such opportunity exists for these

Plaintiffs."). The Court therefore has no basis on the record in front of it to conclude that this

factor favors Plaintiffs.

   With respect to the third factor—the character of the governmental action—the Court

begins by noting its power to outweigh the other two. See Tjm 64 v. Shelby County Mayor, No.

20-CV-2498, 2020 U.S. Dist. LEXIS 134037, at *17 (W.D. Tenn. July 29, 2020) ("Although

the first and second Penn Central factors support Plaintiffs, the third factor does not and

outweighs the other two factors."). A taking "may more readily be found when the interference

with property can be characterized as a physical invasion by government than when interference

18

arises from some public program adjusting the benefits and burdens of economic life to promote the common good." See Penn Central, 438 U.S. at 124 (internal citation omitted).

Here, New York's executive branch has shifted the "benefits and burdens of economic life" in an effort to keep its citizens safe during a deadly pandemic. Put differently, the state has enacted "permissible governmental directives used to address the current public health emergency." Defs.' Mot. at 23; see also Dark Storm Indus. LLC v. Cuomo, No. 20-CV-360, 2020 U.S. Dist. LEXIS 120514, at *43 (N.D.N.Y. July 8, 2020) (Kahn, J.) (granting summary judgment to New York State defendants in Second Amendment challenge to COVID-19 executive orders requiring closure of non-essential businesses). Their pandemic-related directives are "aimed at flattening the curve, slowing the spread of COVID-19, and preventing the health care system from becoming overburdened." Hutton Decl. ¶ 24. Plaintiffs do not impugn the character of the governmental action by alleging that Defendants have acted in "bad faith." See Sherman, 752 F.3d at 565. In fact, Plaintiffs admit that they "argue no misconduct at all!" Pls.' Reply ¶ 15. The character of the relevant governmental action therefore strongly favors Defendants. See Tjm 64, 2020 U.S. Dist. LEXIS 134037, at *20 (noting that the third Penn Central factor weighed heavily against plaintiffs in takings challenge to Shelby County, Tenn. COVID-19 closure order).

In sum, despite the impact of the state action on the auto-racing industry, Plaintiffs have failed to state a plausible claim for relief under the Fifth Amendment. While the Penn Central factor requiring the Court to examine economic impact favors the Plaintiffs, the other two Penn Central factors do not. Plaintiffs fail to adequately plead interference with investment-backed expectations, and the character of the governmental action heavily favors dismissal.

Accordingly, Plaintiffs' Fifth Amendment claim is dismissed.

### 4.  *Plaintiffs' State Law Claims*

Plaintiffs also allege that Defendants' executive orders constitute ultra vires state action. Compl. at 14. Because the Court has dismissed all of Plaintiffs' federal claims, it declines to exercise jurisdiction over their state claims.

"Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "When determining whether to exercise supplemental jurisdiction, a district court has considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case." Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710, 725 (S.D.N.Y. 2005) (internal quotations omitted).

Here, having disposed of all Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over their state claims. See id. (declining to decide state claim following dismissal of federal claims under Federal Rule of Civil Procedure 12(b)(6)). Plaintiffs' state-law claims are therefore dismissed without prejudice.

## B.  Temporary Restraining Order and Preliminary Injunction

Because the Court dismisses all of Plaintiffs' claims, Plaintiffs' Motion is moot. <u>See</u> <u>Hanover Ins. Group</u>, 2012 U.S. Dist. LEXIS 85813, at *6.

## V.       CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion to dismiss (Dkt. No. 15-2) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that Plaintiffs' motion for a temporary restraining order and preliminary injunction (Dkt. No. 4) is **DENIED** as moot; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.


**IT IS SO ORDERED.**

DATED:       August 11, 2020
             Albany, New York



Lawrence E. Kahn
U.S. District Judge

21